UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                       CASE NO. 12-10143

OFFSHORE CONSTRUCTION &                                     SECTION "B"
DIVING COMPANY, INC.

    DEBTOR                                                                                 CHAPTER 7
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
MICHAEL M. EYMARD, et al.

    Plaintiffs

VERSUS                                                                                   ADV P. NO. 12-1008

AVIS BOURG, JR.

    Defendant and Counterclaim Plaintiff

**REASONS FOR ORDER**

This matter came before the court on the motion for summary judgment filed by the plaintiffs, Micahel Eymard, Louis Eymard and Raimy Eymard (the "Eymards") (P-44) and the opposition thereto filed by the defendant and counterclaim plaintiff, Avis Bourg ("Bourg") (P-51). No hearing was held on the matter; the parties requested that the motion be submitted on the briefs. This motion will not dispose of the entire case, and the court's ruling is limited to a few points, as follows: 1) the maximum amount the Eymards can collect from Bourg is $102,649.79, that being Bourg's virile share owed under the guaranty for the payment of $513,248.95 to the bank on the promissory note; 2) if the Eymards prevail on their suit to enforce the guaranty, they are entitled to costs and interest at the judicial rate from the date of demand; they are not entitled to interest under the note or attorney's fees; 3) Bourg's defense of detrimental reliance fails; and 4) there are issues of fact that need to be tried with respect to

1

Bourg's claim under the "clean hands" doctrine.

**I.      Background Facts**

This action began as a suit on a promissory note and to enforce a commercial guaranty filed in state court by the Eymards against Bourg. The three Eymards and Bourg had each been 17.5% owners of Offshore Construction & Diving Company, Inc., the debtor in this case.[1] The debtor was the party primarily liable on a promissory note to Community Bank (the "bank") in the amount of $2,000,000 dated December 19, 2008.[2] The Eymards and Bourg as well as Bassa, the fifth owner of the debtor, all signed commercial guaranties, binding themselves *in solido* with the debtor and each other for the payment of the note.[3] Sometime in 2009, the debtor ceased operations. It continued to make payments on the note, however, until January 19, 2011.[4] On February 2, 2011, the Eymards made payment in full on the note and the bank assigned the note to the Eymards.[5] On February 11, 2011 the Eymards filed their state court suit against Bourg.[6] Bourg filed an answer, reconventional demand, and third party demand to the suit.[7] Bourg later filed an amended and supplemental answer, reconventional demand, and third party

---

[1] The remaining stockholder of the debtor with a 30% interest is Omar Bassa, who was also a guarantor of the debtor's debt to the bank.

[2] (P-21), Exhibit A, pp. 5-6.

[3] (P-51), Exhibit 2.

[4] (P-51), Exhibit 3.

[5] (P-21), Exhibit A, pp. 7-8. Act of Assignment and Notarial Endorsement of Promissory Note and Collateral.

[6] (P-21), Exhibit A, pp. 1-4. State Court Petition.

[7] (P-21), Exhibit B.

demand and petition for shareholders derivative suit.[8] And finally, Bourg filed a second amended answer, reconventional demand, third party demand and derivative suit.[9]

On January 17, 2012 the Eymards filed an involuntary petition for a Chapter 7 bankruptcy against the debtor, and the state court suit between the Eymards and Bourg, which at this point included the debtor as a party, was removed to this court. Because the Eymards' motion for summary judgment had already been filed and argued, but not yet ruled on, in state court, the parties requested that this court rule on the motion.

## II. Legal Analysis

Summary judgment should be granted where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10] The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.[11] A material fact is one that "might affect the outcome of the suit under the governing law," and an issue is genuine when, "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[12] All inferences to be drawn from

---

[8] (P-21), Exhibit H.

[9] (P-21), Exhibit I.

[10] Federal Rule of Civil Procedure 56(c) made applicable herein by Federal Rule of Bankruptcy Procedure 7056.

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Willis v. Roche Biomedical Lab, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

[12] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.ed.2d 202 (1986).

the underlying facts must be viewed in the light most favorable to the party opposing the motion.[13]

There are a couple of areas where the parties do not actually disagree, so the court will address those issues first. Initially, it appeared that the Eymards were making a claim against Bourg for half of the amount that they had paid to the bank to retire the note. The Eymards have clarified that they are only seeking from Bourg a one-fifth share of the amount they paid for the note. The Eymards paid $513,248.95, and they are seeking $102,649.79 from Bourg. The court agrees that in the present posture of this case, this is the maximum amount to which the Eymards are entitled, and indeed this is not disputed by them. Further, the Eymards agree that they are only entitled to recover their costs plus interest at the judicial rate from the date of demand, not interest at the rate set forth in the note. Further, they agree that they are not entitled to attorney's fees.

This leaves only a few remaining arguments by Bourg for the court to examine. First, Bourg claims that he has a defense of detrimental reliance, because sometime in June 2009, around the time that the debtor was discontinuing its operations, Michael Eymard told Bourg that the debtor company would continue to make its payments on the note, so that Bourg should not concern himself with his liability under the guaranty. Bourg argues that had he known the debtor was not going to pay the note, he "would have at least had the possibility to take judicial action to force the Eymards to comply with their obligation under the Community Bank Security Agreement not to transfer or sell Collateral out of the ordinary course of [the debtor's]

---

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

4

business."[14]

Detrimental reliance is defined by Article 1967 of the Louisiana Civil Code:

Cause is the reason why a party obligates himself. A party may be obligated by a promise when he knew of or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Louisiana law requires that the party alleging detrimental reliance prove three elements by a preponderance of the evidence: 1) a representation by conduct or word; 2) justifiable reliance; and 3) a change in position to one's detriment.[15]

The court finds that Bourg's argument does not quite make sense in the detrimental reliance context. The promise Bourg made was as a guarantor bound *in solido* on the note payable to the bank. He thus promised to pay the debtor's debt if the debtor defaulted. When Bourg signed the guaranty, in December 2008, the debtor had not yet ceased operations, and presumably Bourg made a decision at the time he signed the note that he was willing to guaranty the debtor company's debt personally. The statement Michael Eymard may or may not have made concerning the payment of the note after the debtor had ceased operations took place long after Bourg signed the personal guaranty. Thus, the court cannot find that Bourg relied to his detriment on the statement of Michael Eymard when he signed the guaranty.

Further, if Michael Eymard did make the statement to Bourg that the debtor would make full payment on the note, absent some sort of written agreement to that effect, binding the debtor

---

[14] (P-51). Memorandum in opposition to motion for summary judgment at p. 11.

[15] *Ameritech U.S.A., Ltd. v. Nottingham Construction Co.,* 57 So.3d 1043 (La. App. 1 Cir. 2010).

5

and/or releasing Bourg from his guaranty, Micahel Eymard's statement did not affect Bourg's personal guaranty that he had signed with the bank. The court finds that even viewing Bourg's position in the light most favorable to Bourg, i.e., that Michael Eymard did make the statement as Bourg claims, Bourg cannot prevail on his detrimental reliance defense.

Bourg next argues that he is not liable to the Eymards on the guaranty because of the "clean hands" doctrine, which states that "a person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part."[16] The clean hands allegation stems from Bourg's assertion that the Eymards transferred, without consideration, assets that could have been used to pay the promissory note away from the debtor and into a second company. Although the Eymards would be entitled to any such assets of the debtor after they had paid the note, Bourg alleges that most of the debtor's assets were transferred before the Eymards paid the note. Thus, it appears there are some factual issues that may need to be determined with respect to this part of Bourg's claim. Additionally, there is the rest of Bourg's suit, which is not addressed by the Eymards' summary judgment motion that the court will address at the trial set in November.

A separate order will be entered in accordance with these reasons.

New Orleans, Louisiana, September 28, 2012.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

[16] *Redar, LLC v. Rush,* 51 So.3d 859, 868 (La. App. 3 Cir. 2010) *citing Allvend, Inc. v. Payphone Comm'ns Co., Inc.* 804 So.2d 27 La. App. 4 Cir. 2001).